IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RICHARD SCHALLER,
          Plaintiff,

vs.                                       Case No. 3:10cv444/WS/EMT

UNITED STATES OF AMERICA et al.,
          Defendants.
_____/

## REPORT AND RECOMMENDATION

      This cause is before the court on Plaintiff's third amended civil rights complaint (doc. 23). The filing fee has been paid.

      At the time Plaintiff initiated this action he was a federal inmate housed at Keeton Corrections, Inc., in Pensacola, Florida.[1]  He names the United States of America and two federal employees as Defendants.  Pursuant to 28 U.S.C. § 1915A, regardless of the litigant's in forma pauperis status, in a case in which a prisoner seeks redress from a government officer or employee, the court must dismiss the case in whole or in part if the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted.  28 U.S.C. § 1915A(a), (b).  Plaintiff was a prisoner at the time he filed this case.  Therefore, although he has been released from custody, screening pursuant to 28 U.S.C. § 1915A is appropriate in light of his custodial status at the time of filing.  *See e.g.,* Johnson v. Hill, 965 F. Supp. 1487 (E.D. Va. 1997); *cf*. Kane v. Lancaster County Dept. Of Corrections, 960 F.Supp. 219 (D. Neb. 1997) (individual who was in custody at the time of events complained of but not at the time case was filed was not a prisoner for purposes of 1915A); McGore v. Wrigglesworth, 114 F.3d 601 (6th Cir. 1997) (release from custody does not change

---

[1]  Plaintiff has advised the court that he entered supervised release on November 18, 2010, and initially resided at his home in Niceville, Florida (doc.6).  He presently resides in Miramar Beach, Florida (*see* doc. 22).

Plaintiff's status with respect to in forma pauperis obligation: individual who is a prisoner at the time case is filed remains responsible for entire filing fee upon release).

A complaint is frivolous under § 1915A "where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). Dismissals for failure to state a claim are governed by the same standard as Fed. R. Civ. P. 12(b)(6). Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997). The allegations of the complaint are taken as true and are construed in the light most favorable to the plaintiff. *See* Pielage v. McConnell, 516 F.3d 1282 (11th Cir. 2008); Thaeter v. Palm Beach County Sheriff's Office, 449 F.3d 1342, 1352 (11th Cir. 2006); Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997). Plaintiff must allege more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," and his complaint must include factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 569 n.14 (2007) (declining to apply a heightened pleading standard, and abrogating Conley v. Gibson, 355 U.S. 41, 47 (1957) ("a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. at 45–46.)) A complaint is also subject to dismissal for failure to state a claim "when its allegations, on their face, show that an affirmative defense bars recovery on the claim." Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008) (quoting Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003)). Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant. Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007) (citing Hall v. United Ins. Co. Of Am., 367 F.3d 1255, 1263 (11th Cir. 2004)). Plaintiff has now submitted his third amended complaint. Further attempts at amendment are unwarranted and sua sponte dismissal is appropriate. *See* Vanderberg v. Donaldson, 259 F.3d 1321, 1323 (11th Cir. 2001).

Plaintiff names three Defendants in his third amended complaint (henceforth "complaint"): the United States of America, and Pamela C. Marsh and Page Gruber of the United States Attorney's

Office in Tallahassee, Florida (doc. 23 at 4, 5).   Plaintiff asserts that Marsh and Gruber[2] violated his Eighth and Fifth Amendment rights when they ordered that his military retirement pay be offset against a debt owed to the court.  The debt in question was a $3,200.00 special monetary assessment and $1,000.00 fine that were assessed in United States v. Schaller, Case No. 3:08cr75/LAC (doc. 167).[3]  The judgment and commitment order in that criminal case reflected that the special monetary assessment was due and payable immediately and that upon Schaller's release, any unpaid balance of the fine would be paid in monthly installment payments of not less than $150.00 (No. 3:08cr75/LAC, doc. 167 at 4).  Plaintiff states that these terms and conditions were reaffirmed in a July 20, 2010 agreement executed between the court and Schaller, and "the United States Attorney (i.e. Marsh) and the Financial Litigation Unit (i.e., Gruber) are listed as 'cc:' on this agreement" (doc. 23 at 4).

Plaintiff asserts that Marsh "unlawfully and maliciously ordered Schaller's protected retired military entitlement offset" without court authorization and without complying with procedures set forth in 5 U.S.C. § 5514 and 31 U.S.C. § 3716 (doc. 23 at 4).  He makes a bald assertion that her specific intent was to cause him "deep mental anguish and long-term physical distress" (*id.* at 5).  Gruber, identified as a subordinate of Marsh's, is also accused of unlawfully and maliciously ordering Schaller's protected retired military entitlement offset against his debt to the United States as a result of his criminal conduct (*id*.).  Gruber is also alleged to have acted with the specific intent of causing Schaller deep mental anguish and long-term physical distress (*id*)

On July 6, 2010, "the Marsh and Gruber office" notified Plaintiff that they ordered the Treasury to offset his retired military pay (*id.*).

---

[2] Plaintiff's allegations against these two Defendants are virtually interchangeable, so the role of each Defendant is not clear.

[3] Plaintiff was convicted of thirty-two charges: obstruction of justice, making false declarations before a grand jury or court, false statement, and twenty-nine counts of conflict of interest (No. 3:08cr75/LAC, doc. 167). The charges stemmed from contracts between the Government and a private company owned in large part by Schaller and a co-Defendant who was a Government employee.

As noted above, subsequently, on July 20, 2010, an agreement was signed for the court and the United States by Brian Jensen, which agreement Plaintiff characterizes as reaffirming the October 13, 2009 monetary penalty against Schaller and the payment schedule (*id.* at 5).

On October 5, 2010, Plaintiff received notice from the Defense Finance and Accounting Service that it had been ordered to offset his retired military pay (doc. 23 at 6).  On October 13, 2010, Plaintiff notified "the Marsh and Gruber office" that this was unnecessary due to the court order and agreement specifying the payment method (*id.*).[4]  On October 25, 2010, he requested the "court" (Ms. Francine Ware) to intervene to protect his "military entitlement."  On October 26, 2010, Ms. Ware advised Plaintiff that there was nothing she could do, and on October 27, 2010, Marsh and Gruber's office notified him that they were proceeding with the offset without explanation (*id.*).

Plaintiff alleges that neither Gruber nor Marsh provided him an explanation of his rights regarding offsetting his military pay, an opportunity to inspect and copy agency records relating to the claim for which they were offsetting his retired military pay, or an opportunity to review the agency decision relating to the claim (doc. 23 at 6–7).  Plaintiff recounts in detail comments by the prosecuting Assistant United States Attorney ("AUSA"), Stephen Preisser, during Plaintiff's criminal proceedings, which he claims are evidence of Mr. Preisser's "deep personal hostility" toward him (*id.* at 7–8).  Mr. Preisser, however, is not named as a Defendant in this case.

Plaintiff contends that the actions of the United States, Marsh, and Gruber were cruel and unusual and well within the scope of the Eighth Amendment (doc. 23 at 8).  He claims that Defendants went to great lengths to inflict as much pain upon him as possible and "broke the law" to inflict that severe pain (doc. 12 at 8–9).  He asserts that their offset of his military retirement was "unnecessary, unauthorized, and unlawful [and] victimizes and severely traumatizes Schaller by cruel, unusual, and inhumane treatment" (*id.* at 9).  He further claims that they wantonly violated the law to increase his pain, and acted with the objective of inflicting pain with no concern for the

---

[4] Plaintiff does not note that at this juncture only two, $25.00 payments toward the $3200.00 special monetary assessment had been paid.

fact that their actions were unlawful in violation of his Fifth Amendment right to due process (*id.*).

In an apparent concession to the fact that there is absolutely no specific evidence of the personal animosity he attributes to Marsh and Gruber, he references the "reckless, hateful, and unwarranted comments" made by AUSA Presser during the criminal proceedings against Plaintiff. He states that "[u]nder the circumstances, this animosity and contempt forms the only reasonable explanation for the Marsh and Gruber unnecessary and unlawful [sic] actions against Schaller" (*id.* at 10).

As relief, Plaintiff asks that the court repay the amount that was unlawfully offset from his military entitlement and enforce the payment method and schedule set up by the court at sentencing. He also seeks $800,000.00 in monetary relief to compensate him for mental anguish and unspecified physical distress caused by Defendants' allegedly wrongful actions (doc. 23 at 11).

First, Plaintiff Schaller is not entitled to relief on his Eighth Amendment claim. The Eighth Amendment proscribes the infliction of "cruel and unusual punishments." It governs "the treatment a prisoner receives in prison and the conditions under which he is confined." Hellig v. McKinney, 509 U.S. 25, 31 (1993); Rhodes v. Chapman, 452 U.S 337, 345–46 (1981). While the "primary concern of the drafters was to proscribe tortures and other barbarous methods of punishment," it also "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Plaintiff asserts that the actions of Gruber and Marsh of securing an offset of a portion[5] of his military retirement entitlement to satisfy his debt to the court "victimize[d] and severely traumatized[d] Schaller by cruel, unusual, and inhumane treatment" (doc. 23 at 9). Despite of the broad definition of cruel and unusual punishment identified in Estelle, Gruber and Marsh's actions were not "cruel and unusual punishment" as proscribed by the Eighth Amendment. *See* Graham v. Florida, 130 S. Ct. 2011, 2021–23 (2010) (discussing general application of Eighth Amendment). In Graham, the Court recognized that the standard of extreme

_____

[5] Attachments to the original complaint reflect that 15% of Plaintiff's military retirement pay was attached. The court has verified through the district's finance department that Plaintiff's debt to the Government stemming from his criminal case was paid in full as of June of 2011.

cruelty embodies a moral judgment, the applicability of which changes as the basic mores of society change. 130 S. Ct. at 2021 (citations omitted). The Court also noted that its precedents dealing with Eighth Amendment law considered punishments with an eye not only toward rejecting those that are inherently barbaric, but also those that are "disproportionate to the crime." *Id.* While Plaintiff may be distraught that, after serving a term of incarceration, he has to pay a financial debt to the court at the same time he is required to pay unpaid income taxes (*see* doc. 1 at 7), his attempt to characterize the actions of Marsh and Gruber as Eighth Amendment violations entitling him to hundreds of thousands of dollars in damages borders upon frivolous. His conclusory suggestions of ill intent do not transform his narrative into an actionable constitutional violation.

Furthermore, Plaintiff's claim for monetary damages for mental anguish he suffered as a result of any alleged misconduct is prohibited by 42 U.S.C. § 1997e(e). Title 42 U.S.C. § 1997e(e) provides that "[n]o Federal civil action **may be brought** by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury" (emphasis added). This is an affirmative defense, not a jurisdictional limitation. Douglas v. Yates, 535 F.3d 1316, 1321 (11th Cir. 2008). A complaint, or in this case a portion thereof, is subject to dismissal for failure to state a claim "when its allegations, on their face, show that an affirmative defense bars recovery on the claim." Yates, 535 F.3d at 1321 (quoting Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003)). As the Eleventh Circuit has explained: "[Section] 1997e(e) applies only to lawsuits involving (1) Federal civil actions (2) brought by a prisoner (3) for mental or emotional injury (4) suffered while in custody." Napier v. Preslicka, 314 F.3d 528, 532 (11th Cir. 2002). The Eleventh Circuit has determined that "the phrase 'Federal civil actions' means all federal claims, including constitutional claims." Napier, 314 F.3d at 532. Plaintiff's complaint alleging Eighth and Fifth Amendment violations qualifies as a "Federal civil action" under this definition. Further, it is undisputed that Plaintiff filed his complaint while imprisoned. Additionally, Plaintiff's complaint alleges "mental anguish," i.e., mental and emotional injuries without any physical injury,[6] so as to satisfy the third predicate for the application of

---

[6] Plaintiff's attempt to include a claim for "physical distress" in an apparent attempt to circumvent the limitations of 1997e is disingenuous as there are no facts in the complaint to support his assertion that he suffered

§ 1997e(e).  Finally, the initial harm complained of, Marsh and/or Gruber's decision to order the Defense Finance and Accounting Service to offset the military retirement entitlement, occurred while Plaintiff was in custody, so as to satisfy the fourth predicate, although the withdrawals continued beyond the date of his incarceration until the debt was satisfied.  Thus, Plaintiff will not be entitled to recover the damages he seeks for alleged Eighth or Fifth Amendment violations.

Plaintiff also cites 5 U.S.C. § 5514 and 31 U.S.C. § 3716 as jurisdictional bases for this action.  These statutes do not appear to provide a private right of action.  Title 5 U.S.C. § 5514 expressly allows and provides for installment deductions for indebtedness to the United States, while title 31 U.S.C. § 3716 provides the guidelines to be followed to accomplish administrative offset. Plaintiff's claim may be that his Fifth Amendment due process rights were violated because Marsh and Gruber did not follow the proper administrative procedures for offsetting his military retirement pay.  The Due Process Clause protects against deprivations of "life, liberty, or property without due process of law."  U.S. Const. Amend. XIV. A case alleging a procedural due process violation "requires proof of three elements: deprivation of a constitutionally-protected liberty or property interest; state action; and  constitutionally-inadequate process."  Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994).  The allegations of the complaint do not establish the existence of a due process violation.  And, as noted in the court's previous orders, it may have been that Plaintiff's attempt to enjoin the offset of his military benefits would have been more properly addressed by filing a motion in his criminal case.  See, e.g., United States v. Trainor, 2010 WL 2039801 (D.N.H. 2010).  Such a motion is likely moot however, as the debt to the court has been satisfied.

To the extent Plaintiff names the United States as a Defendant, absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.  F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994); Loeffler v. Frank, 486 U.S. 549, 554  (1988); Federal Housing Administration v. Burr, 309 U.S. 242, 244 (1940).  Sovereign immunity is jurisdictional in nature.  Indeed, the "terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941); see also United States v. Mitchell, 463 U.S. 206, 212 (1983) ( "It is axiomatic that the United States may not be sued without its consent

---

"physical distress" as a result of Defendants' actions (doc. 23 at 11).

and that the existence of consent is a prerequisite for jurisdiction.")  There appears to be no basis for "consent" to be sued in this case, and absent such, the United States must be dismissed.

For all of the foregoing reasons, Plaintiff's third amended complaint fails to state an actionable claim against any of the named Defendants, and it should be dismissed.

Accordingly, it is respectfully **RECOMMENDED**:

That this cause be **DISMISSED** for failure to state a claim pursuant to 28 U.S.C. § 1915A(b)(1).

At Pensacola, Florida, this 29th day of December, 2011.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. *See* **28 U.S.C. § 636;** United States v. Roberts**, 858 F.2d 698, 701 (11th Cir. 1988).**